UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------ x
                         :
DIANE M. BATISTA               :             3:19 CV 1660 (RMS)
                         :
V.                             :
                         :
COMMISSIONER OF SOCIAL    :
SECURITY                  :             DATE: NOVEMBER 16, 2020
                         :
------------------------------------------------------ x

<u>RULING ON THE PLAINTIFF'S MOTION TO REVERSE OR REMAND AN
ADMINISTRATIVE AGENCY DECISION</u>

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeks review of a final decision by the Commissioner of Social Security ("SSA") denying the plaintiff Disability Income Benefits ("DIB").

I.      <u>ADMINISTRATIVE PROCEEDINGS</u>

The plaintiff filed an application for DIB on August 29, 2014, claiming that she had been disabled since December 20, 2013 due to arthritis, Type 2 diabetes, anxiety, depression, dizziness and fatigue. (Doc. No 10, Certified Transcript of Administrative Proceedings, dated January 2, 2020 ["Tr."] 70; 277-79). The plaintiff's applications were denied initially and upon reconsideration (Tr. 83, 99), and, following a hearing before Administrative Law Judge ("ALJ") John Aletta, the ALJ filed an unfavorable decision on November 1, 2016. (Tr. 100-21). The Appeals Council denied review on December 30, 2016 (Tr. 122), and the plaintiff commenced an action in this court. (Tr. 127-28; <i>see</i> No. 3:17cv369 (RNC)).[1] On February 9, 2018, the court issued a judgment of remand (Tr. 129), and on January 10, 2019, the Appeals Council remanded

---

[1] In the interim, the plaintiff filed a subsequent Title II application which was granted with an onset date of November 2, 2016. (Tr. 4).

the case to the ALJ for a *de novo* hearing and to issue a new decision for the "period prior to November 2, 2016." (Tr. 130-34).

On July 25, 2019, the ALJ held a second hearing (Tr. 28-69), following which he issued a second unfavorable decision, dated August 21, 2019. (Tr. 4-20). In that decision, the ALJ acknowledged that the plaintiff's subsequent Title II application was granted,[2] but made clear that "[n]o part of this decision disturbs that finding." (Tr. 4). His decision considered "only the period from the alleged onset date of disability, December 20, 2013 through November 1, 2016." (*Id.*).

Following the five-step evaluation process, the ALJ found that the plaintiff had not engaged in substantial gainful activity during the relevant period from her alleged onset date of December 20, 2013, through her date last insured of December 31, 2018.[3] (Tr. 6, citing 20 C.F.R. § 404.1571 *et seq.*).

At step two of the sequential analysis, he found that the plaintiff had the following severe impairments through November 1, 2016: fibromyalgia, bilateral carpal tunnel syndrome, trochanteric bursitis of the bilateral hips, degenerative disc disease ("DDD") of the cervical spine, a pes planus deformity of the bilateral feet, tendinitis of the bilateral ankles, a depressive disorder, and a panic disorder with agoraphobia. (Tr. 7-8). He further concluded that no impairment met or medically equaled a listing. (Tr. 9-10).

Next, the ALJ determined that, through November 1, 2016, the plaintiff had the residual functional capacity ("RFC") to perform work at the medium exertional level except she was limited to frequent handling and fingering bilaterally; frequent reaching with the left upper

---

[2] *See* note 1 *supra.*

[3] Although the ALJ considered the period of December 20, 2013 to December 31, 2018, as discussed above, nothing in his decision disturbed the finding of disability from November 2, 2016 to the plaintiff's date last insured. (Tr. 4). Thus, although he referenced the period of December 20, 2013 to December 31, 2018 in his consideration of step one of the sequential analysis, his decision applied only to the period of December 20, 2013 to November 1, 2016. He referenced the November 1, 2016 date through the remaining steps of the sequential analysis.

extremity; frequent stooping, crouching, kneeling, and climbing ramps and stairs; and, occasional crawling and climbing of ladders, ropes and scaffolds.  (Tr. 10-11).  She could not work at unprotected heights or operate a motor vehicle; she could perform "simple, routine tasks, but not at a strict production rate pace. She could execute simple routine instructions." (Tr. 11).  She could have occasional interaction with the public and coworkers, and she retained the ability to set simple, routine work plans and to travel to familiar locations. (Tr. 11).

The ALJ determined that, through November 1, 2016, the plaintiff was unable to perform past relevant work, though she was able to perform other work as a laundry laborer (DOT 361.687-018), warehouse worker (DOT 922.687-058), and dietary aide (DOT 319.677-014). (Tr. 18-19). Thus, the ALJ concluded that the plaintiff was not under a disability from December 20, 2013 to November 1, 2016. (Tr. 20).

The ALJ's decision became the final decision of the agency on October 21, 2019.  (*See* 20 C.F.R § 404.984(d) ("If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand.")).  On October 22, 2019, the plaintiff filed her complaint in this pending action (Doc. No. 1), and on November 22, 2019, the parties consented to the jurisdiction of a United States Magistrate Judge.  (Doc. No. 7). This case was transferred accordingly.

On May 1, 2020, the plaintiff filed her Motion for Remand (Doc. No. 14), with a brief in support (Doc. 14-1 ["Pl. Mem."]), and a Statement of Material Facts (Doc. No. 15).  On August 17, 2020, the defendant filed, as one pleading, a memorandum in support of a Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) with Reversal and Remand of the Cause to the Defendant. (Doc. No. 22). The defendant moves for remand of his final decision for further

administrative proceedings under Sentence Four of 42 U.S.C. § 405(g).  On August 24, 2020, the plaintiff filed a reply brief. (Doc. No. 23).

The sole issue before the Court, therefore, is whether the case shall be remanded for further proceedings or remanded solely for the calculation of benefits.  (Doc. No. 22 at 5-8).

For the reasons stated below, the plaintiff's Motion for Remand (Doc. No. 14) is GRANTED such that the matter is remanded for further proceedings consistent with this Ruling.

II.   <u>DISCUSSION</u>

The decision of an ALJ may be reversed and remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  This fourth sentence of 42 U.S.C. § 405(g), known as "Sentence Four," gives the Court the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner.  42 U.S.C. § 405(g).

The defendant concedes that remand is warranted because the ALJ erred in his treatment of the opinion evidence concerning the plaintiff's mental health; consequently, the ALJ's RFC assessment is not supported by substantial evidence in that it "does not adequately account for [the plaintiff's] ability to perform sustained work activities as a result of her mental impairments, and the decision does not contain adequate rationale discussing these limitations." (Doc. No. 22 at 3 (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (noting that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence of record, or where other inadequacies in the ALJ's analysis frustrates meaningful review")). The defendant concedes that, in determining the RFC, the ALJ erred in several respects.

First, he did not adequately evaluate the opinions of Christopher Penta, Psy.D. (Doc. No. 22 at 3-4).[4] Second, he "highlighted certain normal findings without considering abnormal findings that were consistent with Dr. Penta's restrictions and with [the plaintiff's] subjective allegations, and that at least arguably warranted further restrictions in the RFC." (*Id.*). Third, the ALJ "incorrectly cited to [the plaintiff's] activities of daily living as examples of 'improvement' and 'fewer symptoms of her anxiety' in 2015" when the documentary evidence did not support that conclusion. (*Id.* (citing Tr. 17-18)). Lastly, because the ALJ's "reasons for rejecting Dr. Penta's opinions are not supported by the record," the ALJ erred in assigning little weight to the opinion of Dr. Shahroz Kidwai "in part because the doctor appeared to base his opinion" on the opinion of Dr. Penta and the opinion Dr. Penta co-signed with Elizabeth Johnson, APRN. (*Id.* at 5). In light of the defendant's concession that these errors warrant remand, the Court need not address the plaintiff's arguments regarding the ALJ's treatment of the opinion evidence of record.

The defendant argues, however, that despite these errors, remand for the calculation of benefits is not warranted because the evidence does not demonstrate that the only possible conclusion is a finding of total disability thereby "'render[ing] any further proceedings pointless.'" (Doc. No. 22 at 5 (citing *Kress v. Barnhart*, 297 F. Supp. 2d 623, 624 (W.D.N.Y. 2004) (quoting *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999)))). He claims that the ALJ correctly determined that substantial evidence did not support a finding that the plaintiff's mental impairment met Listing 12.04, and the record "does not contain persuasive evidence of disability." (Doc. No. 22 at 7-9). Conversely, the plaintiff asserts that, based on Dr. Kidwai's opinion that the plaintiff met

---

[4] To be clear, Dr. Penta issued his own opinion on April 21, 2015 (*See* Tr. 581-85) and co-signed an opinion from Elizabeth Johnson, APRN. (Tr. 402-06).

Listing 12.04 (*see* Tr. 1144),[5] she would automatically be entitled to a finding of disability. (Doc. No. 14-1 at 13). The sole issue for the Court's determination, therefore, is the type of remand order that is appropriate in this case.

A.   REMAND FOR FURTHER PROCEEDINGS IS WARRANTED

"In deciding whether a remand is the proper remedy," the Second Circuit has "stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) (citation omitted). When a district court remands solely for the calculation of benefits, the court must find that, "irrespective of the legal error, the record contains 'persuasive proof' of the claimant's disability and 'a remand for further evidentiary proceedings would serve no purpose.'" *Casanova v. Saul*, Civ. No. 3:19-cv-0086-TOF, 2020 WL 4731352, at *2 (D. Conn. Aug. 14, 2020) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d. Cir. 1980)). Persuasive proof of disability exists when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

It is undisputed that the ALJ's reasons for rejecting Dr. Kidwai's opinion that the plaintiff met Listing 12.04 are unsupported and warrant remand. (Doc. No. 22 at 5).  There is additional evidence in the record, however, that counters Dr. Kidwai's opinion that the plaintiff's mental impairment met Listing 12.04. Thus, the Court cannot conclude that a remand would serve no purpose. *Casanova*, 2020 WL 4731352 at *2.

To meet the criteria of Listing 12.04, a claimant must establish both the "paragraph A" and "paragraph B" criteria, or the existence of the "paragraph C" criteria. *See* 20 C.F.R. Part 404, Subpart

---

[5]  Dr. Kidwai based his conclusion that the plaintiff's mental impairment met Listing 12.04 on the psychiatric evaluation by Dr. Penta. (Tr. 1144).

P, Appendix 1, § 12.04. In relevant part, "paragraph B" of the listing requires that the claimant's mental impairment results in at least one extreme or two marked limitations in the following broad areas of functioning: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace, or 4) adapting or managing themselves. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(B). A marked limitation means a serious limitation in functioning independently, appropriately, effectively, and on a sustained basis, and an extreme limitation is defined by an inability to function independently, appropriately, or effectively, and on a sustained basis. *Id*.

The ALJ concluded that the plaintiff had mild limitations in the area of understanding, remembering, or applying information. (Tr. 9). He relied on the plaintiff's mental status examinations that did "not reveal findings of memory deficits []" or "formal thought disorder[.]" (Tr. 9, *referring to* Tr. 422-23, 513-14). The plaintiff reported to the consultative examiner, Michele Krynski, Ph.D., that "99 percent of the time [she] can remember with thinking a lot" (Tr. 512), and Dr. Penta noted that the plaintiff's cognitive distortions related to her fear of crime and riding in vehicles were not suggestive of clearly paranoid thought process. (Tr. 589). Additionally, in light of the plaintiff's reports that she was agoraphobic, and that she had a generalized fear of people invading her home, the ALJ concluded that the plaintiff had a moderate limitation in the area of interacting with others, but he noted also that she was able to attend her appointments with her providers without any indication of significant anxiety or abnormal behaviors. (Tr. 9-10, *referring to* Tr. 422-43, 581-85). Dr. Penta, however, opined that the plaintiff's symptoms "have affected her interactions in all relationships[,]" and he rated her as having a "[r]educed ability" to interact appropriately with others, ask questions, or respect or respond appropriately to others in authority. (Tr. 584). He explained that her "phobic avoidance of normal activities . . . have at times left her confined to her bedroom as she feared other areas of the home." (Tr. 583).

Next, the ALJ found that the plaintiff had a moderate limitation in the area of concentrating, persisting, or maintaining pace. (Tr. 10). The ALJ concluded that, while the plaintiff had anxiety-

induced cognitive distortions, the record shows that those distortions did not rise to the level of a formal thought disorder. (Tr. 10, *referring to* Tr. 581-82 (finding "severe anxiety related cognitive [illegible] that are just short of delusional")). The plaintiff reported to Dr. Krynski that she "[had] occasional poor concentration with [her] sugar being high" (Tr. 512), and APRN Johnson questioned whether the plaintiff was, in fact, delusional. (Tr. 994 (noting "? delusional"), Tr. 997 (noting "these fears border on delusion and seem to be delusional"), Tr. 1004 (noting "still having delusional (?) thoughts"), *see* Tr. 1006 (same)). The ALJ developed the record by obtaining an opinion from Dr. Krynski who noted, after assessing the plaintiff, that "[b]rief psychological testing did not indicate cognitive impairment." (Tr. 514). As the ALJ acknowledged in his decision, however, Dr. Krynksi did not assess the plaintiff's functional limitations, and therefore, her assessment did not shed light on the plaintiff's ability to perform work-related activities. In the impairment questionnaire completed by Elizabeth Johnson, APRN on April 11, 2015, she noted decreased short-term memory, impaired concentration, and decreased cognitive abilities. (Tr. 403). Her treatment records reflected the same. (*See* Tr. 1010 (mild impairment in short-term memory due to anxiety)). Rather than reference these findings, however, the ALJ rested his conclusion on the plaintiff's ability to perform simple tasks such as household chores, watching television, and reading. (*See* Tr. 10; *see* Tr. 512-13 (reporting that "on a typical day she stays home, completes household chores, naps, reads, watches some TV, and converses with family and friends"); *see also* Tr. 99).

Finally, the ALJ concluded that the plaintiff had a moderate limitation in adapting or managing herself. (Tr. 10). He noted that the plaintiff had trouble tolerating stress and had "difficulty gaining the insight necessary to work towards modifying her perceptions." (Tr. 10, *referring to* Tr. 422-23 (noting "[a]nxiety[-]related cognitive distortions"), 511-14 (noting insight appeared "somewhat limited"), 581-89 (noting poor insight, "fair to good hygiene")). Conversely, however, Dr. Penta and APRN Johnson found that the plaintiff had no ability to use appropriate coping skills or handle

frustration, and described the plaintiff's appearance as "disheveled, no skincare or makeup. She has very fatigued eyes." (Tr. 403, 405).

Moreover, the ALJ relied, in part, on the opinions of the State agency psychologists Drs. Lindsay Harvey and Robert Sutton who found that the plaintiff's impairments did not satisfy the paragraph B or paragraph C criteria for Listing 12.04. (Tr. 77, 92-93). The State agency reviewers cited to Dr. Krynski's consultative exam and Dr. Penta's treatment notes and afforded weight to these treating sources. (Tr. 75, 77, 91, 93). While an ALJ "is not precluded from giving significant weight to the opinion of a state agency consultant" over the opinion of a treating physician, *Withus v. Saul*, No. 18CV10923VSBJLC, 2019 WL 6906972, at *16 (S.D.N.Y. Dec. 19, 2019) (multiple citations omitted), the ALJ should weigh such opinions using the same factors used to weigh a treating source's opinion, including the consistency of the opinion and the support for the opinion in the medical evidence. *See id.* The ALJ did not articulate his reasons for accepting these opinions over the opinions of the treating providers, nor did he explain Drs. Harvey and Sutton conclusion that the plaintiff did not meet Listing 12.04 when they based their opinion, at least in part, on Dr. Penta's treatment notes. In light of the errors the ALJ made in his consideration of the treating physician opinion evidence, the ALJ's reliance on the opinions of non-examining State agency sources cannot constitute substantial evidence to override those treating source opinions.

The record does not contain "'persuasive proof' of the claimant's disability" rendering pointless "'a remand for further evidentiary proceedings'" *Casanova*, 2020 WL 4731352, at *2 (quoting *Parker*, 626 F.2d at 235), since there was evidence in the record upon which the ALJ relied in reaching his conclusion that the plaintiff's mental impairment did not meet Listing 12.04. The ALJ, however, erred in his treatment of Dr. Penta's and Dr. Kidwai's opinions, both of which address this specific listing criteria. The ALJ relied on some of Dr. Penta's assessments but ignored some of the more severe assessments, and his reason for rejecting Dr. Kidwai's opinion was based on

Case 3:19-cv-01660-RMS   Document 24   Filed 11/16/20   Page 10 of 12

his erroneous treatment of Dr. Penta's opinions. Thus, although the plaintiff may ultimately prove to be right on this point, the Court cannot conclude that there is persuasive proof that the plaintiff's mental impairment met Listing 12.04. Accordingly, the record precludes the Court from finding that the plaintiff is presumptively disabled, and therefore, that a remand for the calculation of benefits is appropriate. On remand, the ALJ shall consider whether, when assigning proper weight to both Dr. Penta's and Dr. Kidwai's opinions, the plaintiff's mental limitation meets Listing 12.04, and whether the plaintiff retains the RFC to perform sustained work activities given her mental limitations.

B.  ADDITIONAL CONSIDERATIONS DO NOT WARRANT REMAND FOR CALCULATION OF BENEFITS

The plaintiff does not dispute that the record lacks persuasive evidence of disability; instead, she argues that further proceedings to develop the record are "contraindicated by hardship from the length of time this matter has been pending, the ALJ's insufficient decision, and the support for [the plaintiff's] claim." (Doc. No. 23 at 1-3).

The decision to remand falls within the discretion of the district court and when exercising that discretion, the court evaluates the "relative hardships that govern a discretionary selection of alternative remedies. . . , and [considers] the hardship to a claimant" that may result from further delay. *Butts*, 388 F.3d at 387. The plaintiff's claim of delay, however, is an insufficient ground, on its own, to justify remand solely for the calculation of benefits. *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (holding that "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits").

As discussed above, the defendant concedes that the ALJ's decision was deficient in that he did not adequately evaluate the opinions of Dr. Penta and Nurse Johnson, he erred in his consideration of Dr. Kidwai's opinion, he incorrectly assessed the plaintiff's activities, and he failed to adequately assess the plaintiff's subjective complaints. (*See* Doc. No. 22, at 2-4). These

errors in the ALJ's decision and the ALJ's treatment of the evidence supporting the plaintiff's claim most certainly support a remand order, but, as discussed above, the Court cannot conclude that "further evidentiary proceedings would serve no purpose." *Parker*, 626 F.2d at 235 (holding that "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard," the matter should be remanded to the Commissioner for further development of the evidence). A remand serves the purpose of affording the ALJ the opportunity to apply the proper legal standard and consider all of the evidence of the record.

The plaintiff's argument that remand for additional proceedings is not appropriate given the length of time this matter has been pending cannot succeed. Six years have passed since the plaintiff filed her initial claim for benefits. (*See* Tr. 83 (initial application for benefits was filed on August 29, 2014)). In the interim, however, the plaintiff's subsequent application was granted for the period of November 2, 2016 through her date last insured. While several courts have ordered a remand for the calculation of benefits to address the hardship resulting from extensive delays, the cases upon which the plaintiff relies involved much greater delays. *See LaVenture v. Berryhill*, 6:17-CV-0443(LEK/DJS), 2018 WL 3727355, at *4 (N.D.N.Y. Aug, 6, 2018) (holding that remand for calculation of benefits was appropriate given that "proceedings . . . continued for nearly a decade" and "no useful purpose would be served by a remand") (citing *McClain v. Barnhart*, 299 F. Supp. 2d 309, 330 (S.D.N.Y. 2004) (noting the "lengthy [nine-year] delay")).

Given the circumstances of this case and the delay that the plaintiff has already experienced, the Court remands the case to the Commissioner for additional proceedings within a timetable "so as not to prejudice [the] plaintiff with delay of the administrative process." *Lagasse v. Berryhill*, No. 3:16 CV 1184 (WWE), 2017 WL 2984319, at *5 (D. Conn. July 12, 2017).

Accordingly, the Court directs that further proceedings before the ALJ be completed within 150 days of the remand of this matter. *See id.*

VI.     <u>CONCLUSION</u>

For the reasons stated below, the plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 14) is GRANTED such that this matter is remanded for additional proceedings consistent with this Ruling. The Court directs that further proceedings before the ALJ be completed within 150 days of the remand of this matter.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

Dated this 16th day of November, 2020 at New Haven, Connecticut.

                                        /s/Robert M. Spector, USMJ
                                         Robert M. Spector
                                        United States Magistrate Judge